NOT DESIGNATED FOR PUBLICATION

No. 117,735

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LAWRENCE MASON JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed September 21, 2018. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Jon S. Simpson*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM: After sentencing, Lawrence Mason Jr. filed a motion to withdraw his plea, asserting his trial counsel was ineffective on several grounds. The Shawnee County District Court denied his motion after an evidentiary hearing. Mason now appeals. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 2008, the State charged Mason with one count of rape of a child under the age of 14 while he was over the age of 18, contrary to K.S.A. 2006 Supp. 21-

1

3502(a)(2), an off-grid person felony, and two counts of aggravated criminal sodomy with a child under the age of 14 while he was over the age of 18, contrary to K.S.A. 2006 Supp. 21-3506(a)(1), an off-grid person felony. M.M. was the victim. *State v. Mason*, 294 Kan. 675, 279 P.3d 707 (2012).

Mason retained Steven Rosel as his counsel. In December 2012, Rosel voluntarily surrendered his license to practice law in Kansas and was disbarred, apparently resulting from his representation of a different client. See *In re Rosel*, 296 Kan. 97, 97-98, 290 P.3d 611 (2012). During his representation of Mason, Rosel had various meetings with Mason and members of his family. Mason testified that he met with Rosel on at least three occasions: one meeting about the preliminary hearing; one meeting about the plea offer; and one meeting about sentencing. Rosel conducted at least one meeting with members of Mason's family.

On June 4, 2009, the State sent Rosel a letter outlining an offered plea. The plea offer provided that in exchange for Mason's guilty plea to rape and one count of aggravated criminal sodomy, the State would recommend the mitigated grid sentence and dismiss the second aggravated criminal sodomy charge.

Shortly after, Rosel obtained orders from the district court to secure independent DNA testing of the State's evidence. Rosel did not receive the results of this testing until just before a scheduled pretrial hearing on October 2, 2009.

On October 2, 2009, the day of a pretrial hearing, Mason and Rosel discussed the State's plea offer. At the hearing, the parties expressed Mason's desire to accept the plea offer. Mason provided every assurance that he understood his rights, the agreement's terms, the State's evidence, and the consequences of pleading guilty. When he had questions, Mason consulted Rosel and the district court before proceeding. Specifically, Mason expressed satisfaction with Rosel's representation:

2

"THE COURT: Now, I'm going to turn to questions about counsel. I want to make sure that you have had adequate time and opportunity to speak with Mr. Rosel about your decision to enter a plea, consider your overall legal circumstances. Have you indeed had adequate time?

"THE DEFENDANT: Yes, sir.

"THE COURT: Have you carefully considered his advice?

"THE DEFENDANT: Yes, sir, I have.

"THE COURT: Has he in any way forced you to enter the plea?

"THE DEFENDANT: No, he hasn't.

"THE COURT: Are you satisfied with the work he has done on your behalf?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you have any complaints you wish to make known about the way your attorney has treated you?

"THE DEFENDANT: No, not at the present.

"THE COURT: Not at the present?

"THE DEFENDANT: No, he's been pretty good.

"THE COURT: Okay.

"THE DEFENDANT: I have to be honest.

"THE COURT: Okay. I want to make sure that you've—

"THE DEFENDANT: What? Excuse me.

"THE COURT: So the two of you are exchanging, I guess, laughs now. I know it's a very serious matter, but the point that I'm making sure that is covered is that you're satisfied with the work he's done for you?

"THE DEFENDANT: Yes, sir. He makes sure I understand.

"MR. ROSEL: I feel compelled to respond to the laughs comment with all due respect, Judge.

"There have been incredible moments of stress, of trauma, of emotions between my client and I and my client's family. And a little laugh is maybe a release, that's all I would say about that.

"THE COURT: Okay.

"MR. ROSEL: Okay.

"THE COURT: I was not suggesting otherwise.

"MR. ROSEL: All right.

3

"THE COURT: Mr. Mason, today I've asked you several questions. I know this is a difficult decision to make. You've appeared to me to understand the questions I've asked by the way you've responded. That you have responded in a way that leads me to believe that you've understood. Have you indeed understood everything?

"THE DEFENDANT: Yes, sir, I have."

When testifying at his hearing on the motion to withdraw his plea, Mason could not recall the words that were exchanged during the off-the-record discussion between him and Rosel, but Mason did recall that their exchange received a strange look from the district judge. However, Mason did agree that he was being honest when he told the district court that Rosel had been "pretty good" to him, he had carefully considered Rosel's advice before entering the plea, and Rosel never told Mason to lie to the court during the plea hearing or told him that he could not ask questions at that hearing.

Before pleading guilty, Mason also agreed that the State could prove its proffered evidence. That evidence showed that Mason forcibly inserted his penis into M.M.'s vagina and anus. Apart from M.M.'s statements, "DNA testing done by the KBI linked Mason to [M.M.'s] vaginal swab and rectal swab. Independent testing done on Mason's behalf confirmed the rectal swab." 294 Kan. at 678-79. Further, "Mason admitted committing these acts." 294 Kan. at 678. M.M. also presented at her sexual assault exam with an abnormal tear to her perineum.

Ultimately, the district court found no reason not to accept Mason's admission that he raped and sodomized M.M. as charged in Counts 1 and 2. The district court accepted Mason's plea and later sentenced him to a life sentence of imprisonment without the possibility of parole for 592 months. Mason appealed.

On July 6, 2012, the Kansas Supreme Court affirmed Mason's sentence. 294 Kan. at 675, 679. The mandate was issued on July 30, 2012. On July 5, 2013, Mason filed a timely postsentencing motion to withdraw his plea. In this motion, Mason alleged Rosel

4

was ineffective because Rosel did not investigate allegations regarding M.M.'s credibility, motive, past history of false allegations of sexual and other abuse, past threats of false allegations, past sexual history, and specific facts that would explain the physical DNA evidence of Mason on M.M. After the attorney who filed this motion withdrew, Mason's new attorney filed an amended motion to withdraw his plea on November 14, 2014. This motion raised additional grounds for which Mason should be permitted to withdraw his plea. In addition to the claim that Rosel conducted an inadequate investigation, it alleged: (1) Rosel was ineffective for failing to apply for a *Gregg* evaluation (an independent psychological evaluation of the victim if the defendant is able to establish compelling reasons for such an examination, as permitted in *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 [1979]); (2) Rosel waived Mason's preliminary hearing; (3) Rosel failed to file a motion to suppress evidence; (4) the motion for a downward departure was ineffective on its face and was not supported by evidence; (5) Rosel permitted Mason to enter his plea without being fully informed on factual matters in the case; and (6) Rosel did not give Mason his case file after his representation ended. Additionally, the motion argued that the plea advisory was not properly given and that the district court should have been aware that the plea may have been defective because Mason fainted after the pronouncement of his sentence.

The district court held a three-day evidentiary hearing beginning on August 31, 2015, on Mason's postsentencing motion to withdraw his plea. At this hearing, 15 witnesses testified, including M.M. and Mason. However, Rosel did not testify because he was unable to be successfully subpoenaed. At the conclusion of this hearing, the district court ordered the parties to submit briefs. After another change in representation, Mason ultimately filed a brief on October 11, 2016, and the State filed its brief on December 30, 2016.

On March 23, 2017, by written order, the district court denied Mason's motion. The district court held that (1) Rosel was not ineffective for failing to investigate; (2)

5

Mason was not misled, coerced, mistreated, or unfairly taken advantage of; and (3) the plea was fairly and understandingly made.

Mason timely appeals the district court's denial of his motion to withdraw his plea. Additional facts will be introduced in the analysis as necessary.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING MASON'S POSTSENTENCING MOTION TO WITHDRAW HIS PLEA?

On appeal, Mason argues that the district court abused its discretion in denying his motion to withdraw his plea. Notably, Mason focuses his argument on appeal that the district court erred in denying his motion on the grounds that Rosel allegedly failed to conduct a sufficient investigation and that he did not request a *Gregg* evaluation. Specifically, he makes three arguments in support of this assertion. First, he argues that the district court applied the incorrect law to the amount of deference owed to his trial counsel's performance. Second, he argues that the district court conditioned his relief on Mason affirmatively proving his innocence; and third, he argues that the district court ignored evidence presented at the evidentiary hearing.

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2017 Supp. 22-3210(d)(2). Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Davisson*, 303 Kan. 1062, 1064-65, 370 P.3d 423 (2016). Judicial discretion is abused if the action: "(1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law . . . ; or (3) is based on an error of fact." *State v. Jones*, 306 Kan. 948, Syl. ¶ 7, 398 P.3d 856 (2017).

Kansas appellate courts review at least three factors, commonly known as *Edgar* factors, after *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), when considering whether a defendant has demonstrated the requisite manifest injustice. These are: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. See *State v. Green*, 283 Kan. 531, 545-46, 153 P.3d 1216 (2007) (applying the Edgar factors to a postsentence plea withdrawal case); see also *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010) (collecting cases discussing the *Edgar* factors).

"While the *Edgar* factors are 'viable benchmarks for judicial discretion,' we have made clear they should not be relied on to the 'exclusion of other factors.' *Aguilar*, 290 Kan. at 512. See *State v. Freeman*, 292 Kan. 24, 28, 253 P.3d 1 (2011)." *State v. Bricker*, 292 Kan. 239, 244-45, 252 P.3d 118 (2011).

Of note, Mason does not argue on appeal that he was misled, coerced, mistreated, or unfairly taken advantage of nor does he argue that the plea was unfairly or unknowingly made. He only argues that he was not represented by competent counsel at the time of his plea. Additionally, Mason does not argue that any factors outside of the *Edgar* factors are applicable. Therefore, consideration of whether the district court abused its discretion in denying his motion to withdraw his plea is limited to the issue of whether the district court erred in holding that Mason was represented by competent counsel for his plea. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (holding an issue not briefed by appellant is deemed waived or abandoned).

"A defendant filing a postsentence motion to withdraw plea under K.S.A. 22-3210(d) that alleges ineffective assistance of counsel due to deficient performance must meet constitutional standards to demonstrate manifest injustice." *Bricker*, 292 Kan. at 245. Those constitutional standards are set forth in *Strickland v. Washington*, 466 U.S.

7

668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see *Bricker*, 292 Kan. at 245-46. Under the *Strickland* test, Mason must show that (1) Rosel's performance fell below the objective standard of reasonableness and (2) there is a reasonable probability that but for Rosel's errors, the result of the proceeding would have been different, meaning Mason would not have entered a plea but would have insisted on going to trial. See *Strickland*, 466 U.S. at 687; *State v. Kelly*, 298 Kan. 965, 969-70, 318 P.3d 987 (2014); *Bricker*, 292 Kan. at 245-46. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. [Citation omitted.]" 292 Kan. at 246.

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. See *Kelly*, 298 Kan. at 970. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. 298 Kan. at 970. Each of Mason's arguments is now within the purview of this legal framework.

DID THE DISTRICT COURT GIVE IMPROPER DEFERENCE TO ROSEL'S CONDUCT?

First, Mason argues that the district court gave Rosel's performance improper deference. Specifically, Mason argues that because Rosel was subsequently disbarred and allegedly evaded service to testify in this case, his performance should not be given the deference as enumerated in *Pabst v. State*, 287 Kan. 1, 192 P.2d 630 (2008).

In *Pabst*, the Kansas Supreme Court held:

"An important reason for requiring ineffective assistance of counsel claims to originate in the district court is to allow the allegedly ineffective counsel an opportunity to explain his or her reasoning and actions. In the absence of that testimony, our scrutiny is highly deferential. There is a strong presumption when there is no contrary evidence that

counsel's conduct falls within the wide range of reasonable professional assistance. [Citations omitted.]" 287 Kan. at 17.

This is the exact language that the district court quoted and utilized in its written order denying Mason's motion along with other supporting authority. The district court then reasoned that "since Mr. Rosel did not testify at the evidentiary hearing, the presumption that his conduct was objectively reasonable is at its strongest and the judicial scrutiny of his performance must be 'highly deferential.'"

The district court's statement of the law and deference given to Rosel's performance is correct. In *Kelly*, 298 Kan. at 969-70, in the context of a postsentencing motion to withdraw a plea, the Kansas Supreme Court reiterated the deference given to counsel's conduct, holding: "During [the *Strickland*] analysis, there is a strong presumption counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' [Citation omitted.]"; see also *Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").

In *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011), the United States Supreme Court addressed the effect this deference. In that case, Scott Lynn Pinholster sought state and federal habeas corpus relief claiming he received ineffective assistance of counsel during his trial's penalty phase because his attorneys failed to adequately investigate and present mitigating evidence. Pinholster did not support this claim with testimony from his attorneys; rather, Pinholster offered other supporting records, witness declarations, and experts as support. In reviewing the decision granting Pinholster's second petition for habeas relief, the Supreme Court disapproved of the Court of Appeals' misapplication of *Strickland* and the deference owed to counsel's performance under this test:

9

"Nor did the Court of Appeals properly apply the strong presumption of competence that *Strickland* mandates. The court dismissed the dissent's application of the presumption as 'fabricat[ing] an excuse that the attorneys themselves could not conjure up.' 590 F.3d at 673. But *Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' 466 U.S. at 689-90. The Court of Appeals was required not simply to 'give [the] attorneys the benefit of the doubt,' 590 F.3d at 673, but to affirmatively entertain the range of possible 'reasons Pinholster's counsel may have had for proceeding as they did.' *Id.* at 692 (Kozinski, C.J., dissenting). See also *Richter*, [562 U.S. at 110] ('*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind')." 563 U.S. at 196.

See also *Premo v. Moore*, 562 U.S. 115, 123-27, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011) (discussing *Strickland* deference in context of ineffective assistance of counsel in plea assistance).

Even assuming the district court gave Rosel's performance an improper level of deference, Mason's argument regarding a misapplication of the law in *Pabst* is still meritless. The second prong of the *Strickland* test requires that Mason affirmatively show that there is a reasonable probability that but for Rosel's errors, the result of the proceeding would have been different, meaning Mason would not have entered a plea but would have insisted on going to trial. See *Strickland*, 466 U.S. at 687; *Kelly*, 298 Kan. at 969-70; *Bricker*, 292 Kan. at 245-46. Even if the district court gave Rosel's performance an incorrect level of deference, this does nothing to undermine the district court's conclusion that Mason failed to show that "had Mr. Rosel prepared differently, he would not have entered a plea and would have insisted on going to trial."

A review of the record on appeal indicates that Mason presented no "contrary evidence" to rebut the presumption that Rosel's conduct fell "within the wide range of

reasonable professional assistance." *Pabst*, 287 Kan. at 17. The district court did not make an error of law in the deference it gave to Rosel's conduct.

### DID THE DISTRICT COURT CONDITION RELIEF ON WHETHER MASON AFFIRMATIVELY PROVED HIS INNOCENCE?

Mason's second argument is that the district court required him to affirmatively prove his innocence rather than prove he would have gone to trial had Rosel appropriately investigated his case. On appeal, Mason's main contention is that Rosel should have further investigated two things:  (1) M.M.'s credibility, and (2) the allegation that M.M. wiped Mason's used condom on and in herself, which explained how Mason's DNA was located in M.M.'s vagina and anus. He essentially argues that because the district court found the hearsay testimony about M.M. wiping herself with the condom as "not credible," the district court "effectively denied [his] claims" because he did not affirmatively prove his innocence.

Mason makes additional claims of fact to support his condom theory. The night of the rape and sodomy, Mason, his then-girlfriend, and her son—Chandler—were at the house. That evening, Mason and his girlfriend had vaginal intercourse, during which Mason wore a condom. At some point in the evening, Chandler allegedly witnessed M.M. wipe Mason's used condom on herself. However, Chandler never testified in this case. The only testimony that was offered regarding this claim of innocence was the testimony of Mason's biological daughter who testified that Chandler told members of her family this information, and then in turn, members of her family told her about Chandler's alleged statements.

Accordingly, the district court determined that the testimony regarding what Chandler allegedly witnessed was hearsay evidence and was not credible. See K.S.A. 2017 Supp. 60-460 ("Evidence of a statement which is made other than by a witness

11

while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible."). It was incumbent upon Mason to present *admissible* evidence that supported his assertion that Rosel should have investigated this alternative theory, not just *any* evidence. Stated otherwise, without Chandler's testimony, Mason introduced no admissible competent evidence to show what, if anything, Rosel could have or would have learned from Chandler had Rosel and Chandler spoken. The district court found M.M.'s testimony to be credible and the hearsay evidence not to be credible. Refusal to consider hearsay evidence did not require Mason to prove his actual innocence.

Mason needed to produce evidence that there was information Rosel failed to investigate that would have changed Mason's plea and instead lead him to elect to go to trial. See *State v. Casey*, No. 109,172, 2014 WL 5610078, at *4 (Kan. App. 2014) (unpublished opinion) (holding the absence of testimony about alternative scenario to explain presence of defendant's DNA in rape and sodomy case caused defendant no constitutional prejudice because the "scenario turned on a coincidence so extraordinary and so convenient as to test a reasonable person's willingness to give it even fleeting credit"), *rev. denied* 302 Kan. 1013 (2015). Because the testimony about M.M. allegedly wiping herself with the used condom was so extraordinary, it afforded the district court no reasonable basis to find (1) that admissible evidence would have been provided to Rosel had he made Mason's proposed inquiries; (2) all reasonable attorneys would have counseled Mason to face the risk of trial based on that information; and (3) the information would have altered Mason's decision to plead guilty.

A review of the record on appeal clearly shows the district court correctly assessed Mason's ineffective assistance of counsel claims according to *Strickland*. In so doing, the district court did not require that Mason exonerate himself. Rather, the district court required that Mason affirmatively prove that "[Mr. Rosel's] performance fell below the standard of reasonableness and that there was a reasonable probability that, but for

12

counsel's errors, [Mason] would not have entered the plea and would have insisted on going to trial." In context of the *Strickland* test, the district court weighed the strength of the incriminating evidence Mason faced against the allegations and evidence Mason produced. "The evidence against Mason was strong," and the district court viewed the evidence Mason produced with skepticism. Consequently, in weighing the evidence, the district court concluded that Mason "failed to show Mr. Rosel committed any errors with respect to his investigation of circumstances and defenses" or that, had "Mr. Rosel prepared differently, [Mason] would not have entered a plea and would have insisted on going to trial."

It is not the role of this court to reweigh evidence or assess the credibility of witnesses. See *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). Accordingly, Mason fails to demonstrate to this court that the district court made an error of law in denying his motion. The record indicates that the district court correctly analyzed Mason's claim within the proper *Strickland* framework.

DID THE DISTRICT COURT IGNORE EVIDENCE
OF ROSEL'S ALLEGED FAILURE TO PROPERLY INVESTIGATE?

Finally, Mason argues the district court made an error of fact because it ignored evidence that he presented that Rosel failed to properly investigate M.M.'s credibility and his condom theory.

With respect to Rosel's investigation into witnesses who could speak against M.M.'s credibility, the district court recognized the evidence attacking M.M.'s credibility finding that: "M.M. was a troubled child and had significant intellectual, mental, and emotional challenges. Mason's family's testimony that M.M. was known to lie and make false accusations, was presented in an attempt to discredit M.M. and her story." Yet, even

13

with that evidence in mind, the district court specifically found "M.M. to be credible concerning the rape" and rejected Mason's ineffective assistance of counsel claim.

In so holding, the district court implicitly expressed that Mason's evidence attacking M.M.'s credibility would not have assisted Rosel in earning any advantages for Mason in a *Gregg* evaluation. The same judge who made these findings regarding M.M.'s credibility at the hearing on Mason's motion to withdraw his plea is the same judge who would have ruled on any motion for a psychiatric evaluation under *Gregg*. The district court held that Mason's evidence attacking M.M.'s credibility was not so persuasive that all reasonable attorneys would have advised Mason to ignore the physical evidence and take the case to trial. Implicit in this holding is also the conclusion that no reasonable likelihood exists that Rosel's alleged failure to collect evidence attacking M.M.'s credibility influenced Mason's decision to plead guilty.

There was testimony presented at the evidentiary hearing that Rosel did discuss M.M.'s character with Mason's family. According to Mason, Rosel expressed concern that a jury would believe M.M.'s testimony. Given the DNA evidence against Mason, that concern was logically reasonable. Attacking her credibility might have exacerbated that situation. See *Giles v. State*, No. 88,480, 2004 WL 1041086, at *2 (Kan. App.) (unpublished opinion) (considering it "defense strategy" to minimize "jury sympathy" for a victim), *rev. denied* 278 Kan. 844 (2004). Moreover, pursuing a compelled psychiatric evaluation of M.M. could have negatively impacted plea negotiations. See *State v. Taylor*, No. 108,548, 2013 WL 4046587, at *10 (Kan. App. 2013) (unpublished opinion) (finding it reasonable trial strategy to pursue plea negotiations rather than filing a meritless motion that could have precluded plea negotiations), *rev. denied* 298 Kan. 1208 (2014).

Rather than pursue a *Gregg* evaluation, it appears that Rosel decided to invest resources into examining the strength of the State's DNA evidence by requesting

14

independent DNA testing, rather than pursuing a defense around discrediting M.M. See *Harrington v. Richter*, 562 U.S. 86, 107, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (holding that an attorney directing limited resources to avoid activities that appear distractive from more important duties is in line with the Sixth Amendment under *Strickland*). When results from this testing further incriminated Mason, it became even more reasonable for Rosel to doubt the success of a *Gregg* evaluation or any defense strategy at trial that would have attempted to attack M.M.'s credibility. See *Thompson v. State*, 293 Kan. 704, 717-19, 270 P.3d 1089 (2011) (denying similar claim of ineffective assistance of counsel under *Strickland* absent proof that motion for independent psychological evaluation under *Gregg* would have been successful); *State v. Sprung*, 294 Kan. 300, 314-17, 277 P.3d 1100 (2012) (discussing difficulty justifying psychological evaluation under *Gregg* of abuse victim). In light of this evidence, it was also reasonable for Rosel to facilitate plea negotiations to mitigate Mason's exposure to punishment. See *Premo*, 562 U.S. at 126-27 (holding it a "reasonable choice to opt for a quick plea bargain" over risking potentially harsher punishment via trial).

Rosel's own contemporaneous statements at Mason's sentencing further bolster the decision not to attack M.M. At sentencing, many of Mason's family members spoke against M.M., her credibility, and their own inability to come to terms with Mason's guilt. Rosel responded to these statements that his concern in facilitating the plea was to avoid making M.M. "out to be the culprit." He also explained his view regarding Mason's decision to plead guilty:

> "[Mason's family does not] necessarily understand that you can maybe do better for yourself as a defendant if you concede, if the evidence is such that you need to. Judge, it becomes sometimes from the defense perspective, a better thing to plead versus go to trial. And I don't mean to compromise my job or what I do for my clients, but it's incredibly difficult when evidence says what it does. And for the family's sake, they maybe don't understand that [Mason] made decisions based on what he and his attorney

15

had discussed. He doesn't intend for [M.M.] to be the culprit, for anything here to be her fault. He assumes full responsibility for what has happened. That's why he pled."

Rosel's own contemporaneous statements demonstrated that the decision to plead was based on a concern not to villainize M.M. and the strength of the incriminating evidence against Mason. Such thinking shows that further investigation into M.M.'s credibility was unlikely to change Rosel's recommendation as to the plea offer. Finally, given that Mason was familiar with M.M.'s troubles at the time of his decision to plead, and even claimed that his decision to waive his preliminary hearing and to plead guilty was, in part, based on his desire to protect M.M. from testifying, no reasonable probability exists that further investigation into M.M.'s credibility by Rosel would have led Mason to trial. See *State v. Adams*, 297 Kan. 665, 672-73, 304 P.3d 311 (2013) (weighing defendant's "expressed desires to protect her daughter from testifying," the potential of a greater sentence, and the strength of the State's evidence against defendant's claim that she would have risked trial but for counsel's actions).

Moving now to Rosel's investigation into Mason's condom theory, the district court regarded the testimony pertaining to this theory as "hearsay evidence and . . . not credible." In support of this holding, the district court noted that the alleged eyewitness to M.M. rubbing the condom on herself—Chandler, the 11-year-old son of Mason's then-girlfriend—never testified. Unlike Chandler, M.M. testified credibly at the evidentiary hearing, in the district court's opinion, that Mason raped her and his "whole family was trying to get her to change her story." Considering these circumstances against the credible and incriminating evidence Mason faced at trial, the district court denied Mason's ineffective assistance of counsel claim.

Substantial competent evidence supports the district court's skepticism of Mason's condom theory and what evidence Rosel could have discovered had he further investigated it. At the evidentiary hearing on Mason's motion, 15 witnesses testified in

16

support of his motion. Mason claimed he had intercourse with his then-girlfriend and used a condom the night M.M. said she was raped and sodomized. Only one of Mason's biological daughters mentioned anything at the evidentiary hearing about M.M. wiping herself with a used condom. However, Mason's daughter did not see M.M. wipe herself with a condom. "Family" told her that Chandler told them that he saw it happen. Mason's daughter never spoke with Chandler about this allegation. There was no testimony offered to corroborate this third-hand account. Further, Mason testified himself that "[he] couldn't tell you what [Chandler] would say."

Besides the condom theory being a third-hand account and hearsay evidence, other evidence undermines this theory. The officer who executed the search warrant on Mason's home looked for but found no condoms. M.M. was resolute in her testimony at the evidentiary hearing that Mason raped and sodomized her while Chandler was not around, and she said that one of Mason's biological daughters—the one who advanced the condom theory at the evidentiary hearing on Mason's motion—had been "trying to get [her] to change [her] story." This same biological daughter recorded conversations with M.M. in October 2013, and these videos were offered into evidence at the evidentiary hearing as alleged recantations of M.M.'s allegations against Mason. In these videos, M.M. made no mention of wiping a used condom on herself and she could not explain how Mason's DNA got inside of her. Further, Mason's biological daughter testified at Mason's sentencing and made no mention of the condom theory. Chandler's mother also testified at Mason's sentencing about what Chandler told her when she "questioned him the day after this incident happened," and she also said nothing about Chandler witnessing M.M. wipe a used condom on herself. In fact, this condom theory was not discussed at all at Mason's sentencing. Finally, at the evidentiary hearing, neither Mason nor his biological daughter could explain why, if the DNA found inside M.M. was from a condom Mason used to have vaginal sex but not oral sex with his girlfriend, none of Mason's girlfriend's DNA was found in M.M. and why saliva consistent with Mason's DNA was found on M.M.'s anus.

17

All of this contradictory evidence supports the district court's holding. Rosel's performance cannot be deemed insufficient for a failure to discover or use this alleged information, and Mason did not show a reasonable probability that investigation into the condom theory would have changed his decision to plead guilty. See *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) ("[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.").

Finally, the same district judge who denied Mason's motion to withdraw his plea presided over Mason's criminal proceedings and witnessed firsthand Rosel's representation of Mason. Considering that much "'deference and reliance must be placed upon the wisdom and determination of the trial judge who saw all,'" the district court's decision and credibility determinations are further difficult to disregard. *Pabst*, 287 Kan. at 16.

Therefore, Mason has failed to show the district court's decision was based on an error of law or fact. Nor does Mason show that no reasonable person would adopt the view of the district court. Accordingly, Mason has failed to carry his burden in demonstrating that the district court abused its discretion in denying his postsentencing motion to withdraw his plea. There is no error.

Affirmed.

18